IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ROSALINDA NUNO TREVINO,<br>    Plaintiff,<br><br>v.<br><br>CITY OF AUSTIN, TEXAS, and JOHN<br>MATTHEW HATTAWAY,<br>    Defendants. | §<br>§<br>§<br>§   CIVIL ACTION NO. 1:21-cv-00187-RP<br>§<br>§<br>§<br>§<br>§ |

**DEFENDANT CITY OF AUSTIN'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE ROBERT PITMAN, UNITED STATES DISTRICT JUDGE:

Defendant City of Austin, Texas files this Reply in Support of its Motion for Summary Judgment pursuant.

### I.  INTRODUCTION

To be clear, Defendant, City of Austin (hereinafter sometimes referred to as "The City" or "COA" or "APD") moves for summary judgment as to all of Plaintiff's claims of any sort, including a §1983 *Monell* claim against the City of Austin as a result of her arrest on July 4, 2020, in Austin, Texas. There are no issues for a jury to decide. The City renews its arguments as declared in the Motion for Summary Judgment [Doc #30] and adopts Defendant Hattaway's Motion for Summary Judgment [Doc #29], and his Reply in Support of his Motion for Summary Judgment (filed on this date) fully incorporating them and the exhibits here by reference. The evidence is clear. There is no genuine dispute as to any material fact and this Defendant is entitled to judgment as a matter of law on all of plaintiff's claims. Indeed, video evidence conclusively shows the only relevant events. Plaintiff's bald allegations fail and this lawsuit should be dismissed with prejudice.

Plaintiff was arrested for obviously reckless and dangerous traffic violations (see [Doc #29], pp. 2-6). She was then, in accordance with APD policy, searched and frisked for weapons and officer safety by a male police officer (Hattaway) instead of a female officer (see [Doc #29-1, at ¶12). Contrary to and in complete disregard of the objective video evidence, Plaintiff asserts ([Doc. #34] at ¶3, ¶27-34) that this gave rise to five constitutional claims, including bodily search, search and seizure of her car; preventing her from exercising constitutional rights of speech and assembly; sexual and racial discrimination -- alleging that if she had "been a male or white female, that she would not have been treated this way by APD"; and false arrest and fabrication of traffic charges.

Plaintiff brings a *Monell* claim against the City of Austin alleging excessive use of force by Officer Hattaway during the arrest and frisk, hostile and discriminatory practices and customs, and failure of training and supervision. Plaintiff alleges that the City had inadequate policies and tolerated excessive force, violations of free speech and due process by arresting, detaining, stopping, and searching people of color for alleged traffic violations. The City denies Plaintiff's claims and maintains that Plaintiff cannot meet her considerable evidentiary burden to establish liability under 42 U.S.C. §1983.

It is undisputed that the City provides extensive training to its officers (which exceeds state minimums) and specific training—both in practical application and in the law—on the use of force, as well as arrest procedures, and searches/frisks/pat downs that comply with every person's clearly established rights under the United States Constitution. APD Academy taught Officer Hattaway the procedures for making arrests and searching prisoners. APD teaches officers probable cause for making arrests and the policy for performing a frisk (pat-down) for weapons. The policy is captured in Section 306 of the APD General Orders and is taught in the

academy to all officers. Additionally, APD officers and cadets are trained on APD's Policy No. 301.2 of the General Orders which strictly forbids any prejudice or discrimination concerning race, religion, national origin, age, political affiliation, sex, or other personal characteristics in the performance of their duties. ([Doc. #30-1] Ex. 07, Chacon Decl., ¶8; Ex. 08, Lyons Decl.).

With respect to Plaintiffs' claim that the City failed to supervise Officer Hattaway, the undisputed evidence shows that the City has comprehensive policies and procedures in place to ensure that complaints are investigated, including any complaints about use of force, arrests, searches, seizures, and other complaints of alleged misconduct, and that officers are disciplined when appropriate and that the Austin Police Department followed these policies and procedures. Moreover, Plaintiff cannot show that any failure to train, discipline, or supervise was the moving force behind Plaintiff's alleged constitutional deprivations and injuries. Additionally, Plaintiff's claim that the City violated her constitutional rights fails because the evidence shows that the City subjected the Defendant officer to a vigorous pre-hiring review which did not turn up any evidence that he posed a significant risk of engaging in excessive force or engaging in the inappropriate conduct as alleged in Plaintiff's Amended Complaint, or that he was otherwise unfit for law enforcement work.

Plaintiff's arguments ignore the clear facts of this situation, as conclusively shown by the video footage -- that Plaintiff was detained and arrested for being a risk to the general public and pedestrian marchers and the police officers. Defendant Hattaway unquestionably had probable cause to arrest Plaintiff and he properly followed the APD training. All of Plaintiff's claims must be dismissed, including all of plaintiff's alleged constitutional claims of any sort.

It is undisputed from the available video footage that Plaintiff was an obviously erratic and dangerous driver. She was arrested with probable cause for multiple hazardous traffic

violations during a pedestrian protest march down Congress Avenue. In accordance with Austin Police Department training and policies, Officer Hattaway performed a safety frisk (pat-down) search for weapons before removing her from the roadway and securing Plaintiff in the police vehicle. He conducted the search in front of a police vehicle where a vehicle camera could document and at least one other officer was present, as required by APD policy.

It is immaterial whether another car proceeded at the front of the caravan, because plaintiff was causing problems at the back of the march, trying to bypass the safety buffer set in place by Officer Hattaway and other police officers to protect marchers from the risk of vehicles driving into crowds and injuring pedestrians who are marching or otherwise participating in gatherings on public streets. (see [Doc #29], pp. 2-6). Unfortunately, the risk of injuries from horrible events has become too common in recent times, like the one in the Waukesha, Wisconsin, Christmas Parade a year ago when a vehicle driver ignored barricades and police warnings, causing pedestrian deaths and injuries. And, Defendant notes once again that Plaintiff was treated the same as another driver who entered the protest march, and was directed by the police to get out of the procession for the safety of the marchers. In stark contrast to Ms. Nuno Trevino's response, however, the driver of the other vehicle complied and turned off Congress Avenue, as requested, and without incident. (see [Doc #29], p.3 n.2 (Ex. 03, Time MP4 2:39) Ex.04, T18:55:07; and Ex. 10)

Regardless of whether a female officer was on the scene at some point, it is irrelevant because Hattaway was unaware at the time (see [Doc #29-1, at ¶12). And, it is clear that there are no federal or state laws that prevent male police officers from searching female suspects. There is certainly no clearly established law making it a violation of the United States Constitution for a male police officer to frisk a female suspect. She was arrested with probable cause for multiple

hazardous traffic violations during a pedestrian protest march down Congress Avenue. In accordance with Austin Police Department training and policies, Officer Hattaway performed a safety frisk (pat-down) search for weapons before removing her from the roadway and securing Plaintiff in the police vehicle. He conducted the search in front of a police vehicle where a vehicle camera could document and at least one other officer was present, as required by APD policy. (see [Doc #29], pp. 2-6). Officer Hattaway performed the frisk in accordance with APD policy (Policy 306.3.1(a),(d),(e); 306.6; 306.9) and in accordance with Police Academy training. [Doc #29-1, Ex. 07, ¶15; Ex. 08 and 09] From the video it is clear that Officer Hattaway's search was consistent with training and policy for male officers searching female subjects. He used the backside of his hand to frisk sensitive areas of the opposite gender. No APD policies or procedures were violated. ([Doc #29-1, Ex. 01 - Hattaway Declaration; Ex. 02 - Brinker Declaration; Ex. 04 - Hattaway Body-Camera Video; Brinker Body-Camera Video; Ex. 0 6 - Parnell - DMAV Video; Ex. 07, ¶15; Ex. 8 and 9).

It remains undisputed that Plaintiff's actions appeared to present an imminent threat of serious bodily injury to others.  Plaintiff has not met her burden regarding liability on the City.

## II. Argument & Authorities

**Plaintiffs Claim that APD's Training, Supervision, Policies, Procedures, Customs and/or Practices and Ratification Caused Her Alleged Constitutional Violations Must be Disregarded.**

Plaintiff's assertions that APD training and supervision were lacking and indifferent, and that it failed to properly investigate the incident, and issued a misleading press release, are not supported. The City of Austin's Police Department (APD) maintains extensive and detailed policies and procedures regarding all facets of police work, including the use of force, proper search and seizure, and investigation of incidents involving allegations of police officer

misconduct. This includes the allegations of Plaintiff's Amended Complaint (including violations of free speech, due process, and/or assembly and/or retaliating for the exercise of these constitutional rights, or disproportionately arresting, detaining, stopping, and searching people of color for alleged traffic violations). ([Doc #30-1] Ex. 07, Chacon Declaration, ¶¶ 7-15, Attachments 1, 3, 4, 5, 6, 8). These policies and procedures were followed in this incident.

Additionally, APD has numerous policies and procedures to ensure that officers accused of wrongdoing are properly investigated and, if appropriate, disciplined. ([Doc #30-1] Ex. 07, Chacon Declar.; Ex. 09, Miesse Declar.) There is considerable citizen oversight of APD and IAD. The City established the Office of Police Monitor, now known as the Office of Police Oversight (OPO) in 2002 to exercise independent, citizen oversight of APD internal affairs investigations. At the time of this incident in July 2020, the OPO monitored APD in several ways. It received citizen complaints, reviewed internal affairs files, reviewed APD policies and procedures, and made recommendations to the Chief of Police regarding discipline, policies, and procedures.

On July 17, 2020 the Office of Police Oversight sent a Notice of Formal Complaint regarding this incident to the APD Internal Affairs Division (IAD). The OPO made a request for Internal Affairs to initiate an investigation in order to determine if Hattaway's conduct was within compliance of APD policy. IAD conducted its investigation to determine if Officer Hattaway violated any APD policies with respect to use of force and otherwise. IAD and APD chain of command concluded that Hattaway did not violate any of APD's policies during the encounter with Ms. Nuno Trevino.

As for whether a female officer was on the scene at some point, at the time of the July 7, 2020, press release ([Doc #30-1, p.127), as now, it was true that Officer Hattaway told Ms.

Trevino that a female officer was not available because Hattaway was unaware at the time (see [Doc #29-1, at ¶12). Whether a female officer was on the scene at some point, is irrelevant because Hattaway was unaware at the time, and he followed proper APD policy. Further, it is clear that there are no federal or state laws that prevent male police officers from searching female suspects. There is certainly no clearly established law making it a violation of the United States Constitution for a male police officer to frisk a female suspect.

As noted above, the allegations of misconduct against Officer Hattaway were closely investigated by APD on its own, and also at the request of the Office of Police Oversight. The investigation revealed that he did not violate any APD policies. ([Doc #30-1] Ex. 07; Chacon Declar.; Ex. 09, Miesse Declar.)

In addition, APD has rigorous hiring standards and carefully screens its potential employees to determine that they do not pose any unusual risk of using excessive force, or that they are otherwise unfit for law enforcement work. *Id.* (Ex. 07 at ¶ 4-6)  APD also trains all of its cadets and officers on all facets of police work, including the use of force, proper search and seizure, and mental health.  ([Doc #30-1] Ex. 8, Lyons Declaration).  APD's training requirements far exceed the minimum standards required by the state. *Id.*

All of APD's policies and procedures were followed with respect to the hiring, screening, and training of Officer Hattaway. (Ex. 07, Chacon Declar.; Ex. 08, Lyons Declar.)   For a plaintiff to prevail on a failure to train claim, he must allege with specificity how a city's training program is inadequate. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).  Plaintiff has not met this burden, and has not produced evidence why different training procedures should have been obvious to the City.

Further, Plaintiff has produced no evidence that Officer Hattaway was inadequately supervised on the date of this incident and that any alleged failure to supervise was done so with deliberate indifference to the risk of a constitutional violation. To prove deliberate indifference in the context of a claim that a city failed to supervise or discipline a police officer accused of excessive force, a plaintiff must identify the individual supervisor who failed to supervise or discipline and demonstrate that the supervisor had subjective knowledge that the police officer posed a serious risk to cause harm by using excessive force. *James v. Harris Cty.*, 508 F.Supp.2d 535, 551-52 (S.D. Tex. 2011).

Here, Plaintiff does not identify an individual supervisor who failed to supervise or discipline Officer Hattaway. Plaintiff fails to provide any evidence that the City had a policy or practice of inadequately supervising its police officers and that any alleged failure to supervise was done so with deliberate indifference to the risk of a constitutional violation.

Plaintiff's ratification claims must also be dismissed. Nuno Trevino alleges that the City of Austin ratified Hattaway's alleged unconstitutional actions and improper conduct. However, none of the actions of Hattaway or the City support a claim for ratification. The Fifth Circuit has recognized a municipality's liability under the theory of ratification only in very limited circumstances. Ratification occurs when a subordinate's actions are subject to review by the municipality's authorized policymakers, and the authorized policymakers approve a subordinate's actions and the improper basis for them. *James v. Harris County,* 508 F. Supp.2d 535, 554 (S.D. Tex. 2007)(quoting *City of St. Louis v. Praprotnick*, 485 U.S.112, 121 (1988)). However, the Fifth Circuit has stated that the theory of ratification is limited to "extreme factual situations." *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 848 (5th Cir. 2009); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998). A municipality can be held liable under a theory

of ratification only if the version of the story ratified by the city was manifestly indefensible. *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir. 1986).

Nuno Trevino has not produced sufficient evidence that Hattaway's actions in this case were manifestly indefensible such that the City can be held liable under a theory of ratification. As a result, the City is entitled to summary judgment on the ratification claim.

### Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Defendant City of Austin respectfully requests that the Court grant its Motion for Summary Judgment and dismiss the Plaintiff's claims against it with prejudice with all costs assessed to the Plaintiff.  Defendant further requests that it recover any additional relief to which it may be entitled.

RESPECTFULLY SUBMITTED,

ANNE L. MORGAN, CITY ATTORNEY
MEGHAN L. RILEY, LITIGATION DIVISION CHIEF

/s/ Monte L. Barton
MONTE L. BARTON
Assistant City Attorney
H. GRAY LAIRD III
State Bar No. 24087054
MONTE L. BARTON, JR.
State Bar No. 24115616
monte.barton@austintexas.gov
City of Austin-Law Department
Post Office Box 1546
Austin, Texas 78767-1546
Telephone: (512) 974-2268
Direct: (512) 974-2409
Facsimile: (512) 974-1311

**ATTORNEYS FOR DEFENDANT CITY OF AUSTIN**

### CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing on all parties or their attorneys of record, in compliance with the Federal Rules of Civil Procedure, this 31st day of October, 2022.

**Via CM/ECF:**
Carlos R. Soltero
State Bar No. 00791702
carlos@ssmlawyers.com
Gregory P. Sapire
State Bar No. 00791601
Matthew Murrell
Texas Bar No. 24083545
matthew@ssmlawyers.com
Kayla Carrick
State Bar No. 24087264
kayla@ssmlawyers.com
7320 N Mopac Suite 309
Austin, Texas 78731
512-422-1559 (phone)
512-359-7996 (fax)

**ATTORNEYS FOR PLAINTIFF**

  /s/   Monte L. Barton
MONTE L. BARTON